understands, according to the plea agreement, that his guilty plea may result in adverse immigration consequences including deportation. Finally, your Honor, the defendant is fully aware that the Court is not bound by the parties' stipulation of facts, the offense level adjustments, or the Government's recommendation. The Court is free to impose any sentence it deems appropriate up to and including the maximum sentence. Those are the essential elements of the plea agreement, the maximum penalty, and the elements that the Government must prove, your Honor.

THE COURT: Mr. Roy, do you agree that Mr. Leavey has accurately summarized the nature of the charge, the elements, the maximum penalties, and the terms of the plea agreement?

MR. ROY: Yes, I do agree, your Honor.

THE COURT: Would the defendant stand up please and the clerk will administer the oath.

THE CLERK: Raise your right-hand please.

(Through interpreter Anna Cecila Rosado)

THE DEFENDANT: Yes.

A. I do.

THE CLERK: Please state and spell your name.

THE DEFENDANT: Jose Luis Colon-Cruz.

THE INTERPRETER: Jose Luis Colon-Cruz. Alias

Jorge Munez.

THE COURT: You may put your hand down, Mr. Colon.

JOSE LUIS COLON-CRUZ, SWORN

EXAMINATION BY THE COURT:

Q. Do you understand that you're now under oath and that if you do not answer my questions truthfully that you could be prosecuted for perjury or making a false statement?

A. Yes, your Honor.

Q. How old are you?

THE DEFENDANT: 37.

A. 37.

Q. And what is the last grade of school that you completed?

A. Seventh grade.

Q. Why did you leave school after the seventh grade?

A. My father died and I was helping the family by working selling newspapers.

Q. Have you ever been treated for any mental illness or for any addiction to a drug or alcohol?

A. There was a point in time when I was kind of addicted.

Q. Addicted to what?

A. Marijuana and cocaine.

Q. And how long ago was that?
A. Before I had my other felony that was in '93. '92 or '94.
Q. Do you still have an addiction to these substances?
A. After I, after I got out I became free of all that thank God.
Q. Are you presently taking any medications besides excedrin?
A. Only excedrin for the headaches, for the migraines.
Q. Are you able to think clearly and understand what's going on here this morning?
A. Yes, your Honor.
Q. Have you seen a copy of the indictment that contains the charge against you in this case?
A. Yes, your Honor.
Q. Did someone read that indictment to you?
A. Yes, your Honor.
Q. And did you discuss it with Mr. Roy your attorney?
A. Yes, your Honor.
Q. Did Mr. Roy explain to you exactly what you have been charged with and what things the Government would be required to prove in order to convict you of that charge?
A. Yes, your Honor.
Q. And did you hear Mr. Leavey also explain those

things a few moments ago?

A. Yes, your Honor.

Q. Do you understand the charge against you, Mr. Colon?

A. Yes. Yes, sir.

Q. And do you also understand what the Government would have to prove in order to convict you of that charge?

A. Yes, your Honor.

Q. Are you completely satisfied with the representation that Mr. Roy has provided as your attorney in this case?

A. Yes, your Honor.

Q. Now the Court has been provided with a document that is entitled plea agreement. It is 6 pages long and appears to have your signature on the last page. Did you sign that document?

A. Yes, your Honor.

Q. And before you signed it did someone read it to you?

A. Yes, your Honor.

Q. All right. And did Mr. Roy explain to you what the document says and what the significance of signing it is?

A. Yes, your Honor.

Q. Do you understand what that document says?
A. Yes, your Honor.
Q. Does that document accurately describe your agreement with the United States attorney?
A. Yes, your Honor.
Q. Does it omit or leave out anything that you think is part of the agreement?
A. Would you please repeat that question.
Q. Yes. I'm trying to determine whether that document contains the entire agreement between you and the United States Attorney and I want to know whether you think that it leaves out anything that you believe is part of the agreement?
A. Everything is all right, your Honor.
Q. So that document contains the entire agreement between you and the United States Attorney?
A. Yes, your Honor.
Q. Has anyone else made any promises to you, any other promises to you, that have caused you to decide to plead guilty in this case?
MR. ROY: Could I have one moment please, your Honor. Can I have the question read to him again.
Q. Yes. Has anyone else made any other promises to you besides the promises contained in that plea agreement that have caused you to decide to plead

guilty in this case?

MR. ROY: One moment please, Judge (pause).

MR. ROY: Your Honor, the defendant had previously cooperated with the DEA in New York. And he had put me in contact with an agent who was in contact with Mr. Leavey who informed Mr. Leavey of some of the background of the defendant's cooperation. And that's not in the plea agreement since it didn't rise to the level of what the Government would consider appropriate for a 5(k) 1.1 motion. But at sentencing I do intend to make the Court aware of that information.

THE COURT: All right.

Q. Well, what I'm trying to get at here, Mr. Colon, is I need to understand what promises you say have been made to you in exchange for your agreement to plead guilty. Now some of the promises, or maybe all of them are stated in that plea agreement. I want to know if there are any other promises that were made to you that caused you to decide to plead guilty that aren't in the plea agreement?

A. No. None, your Honor.

Q. Has anyone made any threats of any kind against you that have caused you to decide to plead guilty?

A. No, your Honor.

Q. So is it correct to say then that you're making this decision voluntarily because you think it's in your best interest?

A. Yes, your Honor.

Q. Now do you understand, Mr. Colon, that this plea agreement is an agreement between you and the United States Attorney and the Court is not involved in this agreement. Do you understand that?

A. Yes, your Honor.

Q. And what that means, among other things, is that the Court is not making any promises to you and the Court doesn't have to accept any recommendations that the United States Attorney may make about your sentence, you understand that?

A. Yes, your Honor.

Q. Do you understand that if your guilty plea is accepted you could receive a sentence in this case, as Mr. Leavey previously stated and as your plea agreement states, you could receive a sentence of up to 20 years in prison followed by a period of up to three years of supervised release, a fine up to $250,000, and a special assessment of at least one hundred dollars?

A. Yes, your Honor.

Q. And do you also understand that if your guilty plea is accepted you almost certainly will be deported?

A. Yes, your Honor.
Q. And do you understand that if your guilty plea is accepted you can't change your mind later and withdraw the plea unless the Court allows you to do that?
A. Yes, your Honor.
Q. And do you understand that you're not required to plead guilty that you have a right to plead not guilty and to have a trial before a jury if you wish at which the Government would have to present evidence that proves you guilty beyond a reasonable doubt?
A. Yes, your Honor.
Q. And do you understand that if your guilty plea is accepted there won't be any trial. You give up your right to a trial and you also relieve the Government of the obligation of presenting evidence that proves you guilty beyond a reasonable doubt?
A. Yes, your Honor.
Q. And do you understand that, again if your guilty plea is accepted you give up some other rights in addition to the rights I've already mentioned?
A. Yes, your Honor.
Q. Do you remember having read to you as part of the plea agreement what those other rights are that you would be giving up?
A. Yes, your Honor.

Q. All right. Just to be certain there's no misunderstanding I'm going to go over those rights briefly and I'm also going to explain to you the difference between what happens if you plead guilty and what happens if you plead not guilty. First of all as I've already told you, if you plead not guilty you would have a right to a trial. At the trial the Government would have to present evidence that proves your guilty beyond a reasonable doubt. You'd have the right to be represented at the trial by an attorney. If you could not afford an attorney the Court would appoint an attorney to represent you without charge to you. At the trial you would have the right through your attorney to question or cross-examine any witnesses that the Government might present to testify against you. You would have the right to present witnesses that you think might testify in your favor. You would have the right to testify yourself if you wanted to. And if the jury should find you guilty, you would have a right to appeal not only your sentence but you also could appeal claiming that a mistake had been made and you really had not been proven guilty. On the other hand, if your guilty plea is accepted there won't be any trial the next step will be sentencing. You may or may not have a right to appeal your sentence

depending on the circumstances. But you would not have any right to appeal claiming that a mistake had been made and you really are not guilty because you will have admitted your guilt. Do you understand, first of all, what all the rights are that I have mentioned?

A. Yes, your Honor, I understood everything.

Q. And do you also understand the difference between what happens if you plead guilty as opposed to what happens if you plead not guilty?

A. Yes, your Honor.

THE COURT: All right. You may be seated, Mr. Colon. I'm going to ask Mr. Leavey to briefly summarize the facts that he says the Government would be prepared to prove if this case went to trial. You should listen carefully because when he finishes I'm going to ask you whether you agree that all those things are true and that the Government would be able to prove them. Mr. Leavey.

MR. LEAVEY: Your Honor, the Government would expect to prove that this defendant is a native and citizen of the Dominican Republic who entered the United States illegally in January of 1988. On or about April 24, 1995, this defendant was convicted in the Eastern District of Louisiana for an offense of conspiracy to distribute cocaine which is an aggravated

felony. Subsequent to his prison sentence he was deported from the United States on March 17, 1999. Prior to his deportation an Immigration and Naturalization Service agent placed the defendant's right index fingerprint on the warrant of deportation. On March 25, 2005 the defendant was taken into custody by Immigration and Customs Enforcement agents in the District of Rhode Island. His right index fingerprint was then compared with the right index fingerprint on the back of the deportation warrant and was found to belong to the same individual. The Government would also prove that a check of Immigration and Customs Enforcement records would demonstrate that the defendant did not receive permission from the Attorney General or his designee to re-enter the United States after he was deported. That is the essence, your Honor, what the Government would expect to prove at trial.

THE COURT: Okay. Would you stand up please, Mr. Colon. Now, did you hear everything that Mr. Leavey said?

A. Yes, your Honor.

Q. And do you agree that all of those things are true and that if this case went to trial the Government would be able to prove them?

A. Yes, your Honor. I admit that what he said is true.

Q. All right. Having heard everything that you have been told about the nature of the charge against you, the things that the Government would have to prove in order to convict you, the maximum penalties that could be imposed if your guilty plea is accepted, the rights that you are relinquishing by pleading guilty, and everything else that you have been told, do you still wish to plead guilty to this charge?

A. Yes, your Honor.

THE COURT: All right. You may be seated, Mr. Colon. The Court finds that the defendant is fully competent, and he is capable of entering an informed plea, he understands the nature of the charge, the elements that must be proven. The maximum penalties that could be imposed, and the rights that he has relinquishing. The Court also finds that his decision to plead is a voluntary decision and that there's a factual basis for the plea as contained in the Government's proffer. Therefore, the Court accepts the plea of guilty and hereby adjudges the defendant guilty of the offense charged in the indictment. Sentencing is scheduled for October 28, at 9:30 a.m.. Prior to that time, Mr. Colon, a probation officer will want to

talk with you to gather facts for the presentence report. You may have Mr. Roy present when that interview takes place. After the report is completed, you will have a right to examine the report and discuss it with Mr. Roy. And if you believe that the report is incorrect in any way you have a right to object to the report or whatever parts of it you believe are incorrect. If you wish to object to the report, you must submit your objection in writing within 14 days from the date on which the report is first made available for you to review. It is not 14 days from the date that you actually read it or discuss it with Mr. Roy. It's 14 days from the date on which it's made available to you. If you do not object within the 14 day period the Court will consider that you have forfeited your right to object and it will treat whatever is in the report as being accurate. In other words, after the 14 days has expired it's too late to object to the report. You understand what I just said?

THE DEFENDANT: Yes, your Honor.

THE COURT: Also, on the day set for sentencing you will have the right to address the Court and say anything that you think should be considered in determining your sentence. Mr. Roy will have an opportunity to speak on your behalf. Also, you're not

required to say anything. It's up to you whether you want to leave all the talking to Mr. Roy or whether you would like to say something also. That's a decision for you to make. Do you have anything further, Mr. Leavey?

MR. LEAVEY: No, your Honor.

THE COURT: Mr. Roy?

MR. ROY: Nothing, your Honor. Thank you.

THE COURT: All right. The Court will be in recess

(R E C E S S )

# C E R T I F I C A T I O N

I hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Joseph A. Fontes

JOSEPH A. FONTES

August 22, 2006

Date

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | C.R. 05-42T |
| VS. | October 28, 2005 |
| JOSE LUIS COLON-CRUZ | 9:30 A.M. |
| | Providence, RI |

BEFORE THE HONORABLE ERNEST C. TORRES

CHIEF DISTRICT JUDGE

**(SENTENCING HEARING)**

APPEARANCES:

FOR THE GOVERNMENT: James H. Leavey, AUSA
U.S. Attorney's Office
50 Kennedy Plaza
Providence, RI 02903

FOR THE DEFENDANT: Edward C. Roy, AFD
Federal Defender's Office
10 Weybosset Street
Suite 300
Providence, RI 02903

Court Reporter: Angela M. Reynolds, RPR-FCRR
One Exchange Terrace
Providence, RI 02903

Court Interpreter: Jose Kleinberg

**28 OCTOBER 2005 - 9:30 A.M.**

THE COURT: Good morning.

THE CLERK: This is criminal action 04-42T, United States of America versus Jose Luis Colon-Cruz.

THE COURT: This case is here for sentencing. As I understand it, there are no objections to the presentence report -- well, first of all, let me confirm. Mr. Roy and Mr. Colon-Cruz, have you both had an opportunity to review and discuss the presentence report?

MR. ROY: Yes, your Honor. I met with Mr. Colon-Cruz with an interpreter at the ACI -- Wyatt.

THE COURT: Is that correct, Mr. Colon Cruz?

THE DEFENDANT: Your Honor, it is true that he and I reviewed the presentence report. Nevertheless, I objected to a couple, actually, three issues, which he has refused to present and to reevaluate.

THE COURT: What are the three issues that you have objected to?

THE DEFENDANT: Your Honorable Judge Torres. With my attorney, who is present, we read the complete presentence report. I expressed three or four objections which I happen to have written on this piece of paper.

THE COURT: Can you tell me what the objections

are?

THE DEFENDANT: Excuse me. When I was arrested at Route 95 North at the Warwick, Rhode Island exit, it was the weekend, the Easter weekend. I was with my wife and with my children. We were going to spend the Easter weekend with her family who lives here. A State Trooper stopped us. I believe, or I think I was not speeding, nevertheless they did stop us. They asked my wife for her license and her registration. After that, one of the State Troopers requested I show my identification. I gave him my I.D. and he seemed to review it and find that there was an issue or a problem. He came back and he mentioned something about having been arrested or detained, and I basically answered with what I believed was the truth. Your Honor, I don't want to tarry with this topic, but anyway, they asked me if they could search the vehicle and they arrested me, and they took me the next day. They took me to the Warwick Court and I actually had to plead nolo contendre. I told my attorney, Mr. Roy, that the case should be reopened, and that I should pay the $187 that apparently was owed for that.

THE COURT: Let me just interrupt you a moment, Mr. Colon-Cruz. You're here today to be sentenced for the offense of illegally reentering the United States

after having been previously deported. So the only -- that's the only issue before the Court. Now, in making the determination as to what your sentence ought to be, the Court looks at the presentence report to determine what the facts of that offense are and what your personal situation is. So if there's anything in the report that you think bears on those things that might affect the Court's decision in imposing sentence, then I want to give you an opportunity to tell me what it is you think is incorrect. So far you've been talking about the traffic stop that apparently caused the authorities to discover that you were illegally present in this country. You're not being sentenced for the traffic violation. You haven't been assessed any criminal history points for the traffic violation. You apparently pled nolo to that violation. It doesn't appear to have any effect on the sentence in this case. So if your complaint is that you weren't speeding or you were unjustly convicted of the traffic offense, this Court is not the place to challenge that conviction, particularly since it doesn't appear to have any effect on your sentence here. If you want to challenge your nolo plea and the payment of court costs, you can do that separately, you can seek to do that separately, anyway. I think you'd have a

difficult time if you pled nolo, but that's up to you.

What I want to focus on here is I want to give you an opportunity to tell me what things are in this presentence report that you think are incorrect.

THE DEFENDANT: Yes, your Honor, and excuse me. The other objection that I wrote down, the PSR states that I was very cooperative and that I offered all information regarding my biographical background. And then again, following the PSI, it states that I had no objection, that they would contact my wife through cell phone and verify the information. And quite frankly, your Honor, if you recall they were here when I pled guilty and now they are not here today, because they didn't know that there was a sentencing scheduled for today.

THE COURT: Again, I think you're missing the point, Mr. Colon-Cruz. I'll try to explain it again. The question right now is is there anything in this presentence report that is relevant to determining your punishment that you claim is incorrect or inaccurate?

THE DEFENDANT: I had those objections, your Honor. And I will not to tarry any longer, but I don't want to feel this should be the same situation. I have a letter prepared for you, I have a letter asking for clemency or asking for forgiveness, if you would like.

THE COURT: Well that's a different issue, Mr. Colon-Cruz. You'll have an opportunity, once the Court determines what the guideline range in your case is based on the facts in the presentence report, you will have an opportunity to then make an appeal to the Court and explain why you think -- what sentence you ought to receive and why you think you should be entitled to leniency. But we haven't reached that point yet. The question right now is is there anything in the presentence report that is significant or material that you claim is incorrect?

THE DEFENDANT: Yes, your Honor. There's another point here that I don't believe is true. I was arrested on November 18, 2001 in the State of Ohio. This situation referred to an invitation that I received from someone to go to that specific place, again, I'm sorry, I'm not going to give you a whole narration of that story; however, the PSI states that they found or they confiscated 600 grams inside a car. Now, if you look carefully in the records, you will find that it was only 149. I had negotiated an arrangement with the U.S. Attorney's Office. I was working in a body shop downtown in New York. We would work -- or provide services to the DEA's office. They sent me there once, that's on 10th Avenue, to make an

estimate of damages done to a car and take some photographs. There I met a Mr. Caldarone. He was an agent of the DEA. I told him about the fact that I had been deported, about my bad past behavior and all that stuff, and he told me that he possibly could help me. After a while we did some things, and on January 18, 2001, I pled or a plea was reached. They knew that I had reentered illegally. They weren't members. They were part of the Government, and the PSI doesn't seem to mention that.

THE COURT: Are you saying that you were working as an agent of the Government when you were transporting this cocaine in Ohio?

THE DEFENDANT: No, your Honor. No, your Honor.

THE COURT: What are you saying?

THE DEFENDANT: What I'm saying is that after that incident, the body shop that I worked for did or provided services to the DEA. And I was able to introduce myself and to conduct a series of arrests and that kind of work.

THE COURT: Are you saying that you assisted the Government in drug investigations after you pled guilty in Ohio?

THE DEFENDANT: Before I pled guilty. Yes, we conducted various arrests, three people with a lot of

stuff, and they said that they were from the Government, and that, you know, there wouldn't be a problem. And that's when I was arrested, I told the State Trooper that I was working for the DEA.

THE COURT: All right. Mr. Roy, do you have anything to say on this?

THE DEFENDANT: Your Honor, it's not like I'm trying to justify myself. I came to this country --

THE COURT: Just a moment, I'm going to give you a chance to speak later. Right now I'm interested in the presentence report and whether there's anything inaccurate in it, and I want to hear from Mr. Roy now as to what he may have to say.

MR. ROY: Your Honor, with respect to the defendant's cooperation with the DEA in New York, shortly after his arrest, he represented that to me, as did his wife. She came in to meet me in the office several times. And I got a phone number from the defendant for DEA agent. I spoke to the agent on one or two occasions. I gave the agent's phone number to Mr. Leavey. And Mr. Leavey, I believe, spoke to that agent a couple of times. And Mr. Leavey's in a better position than I am to confirm for the Court that I believe he did cooperate with the DEA. However, because of the fact that Mr. Colon-Cruz is illegal, I

guess it is DEA policy they won't provide a letter to the Court because he's an illegal alien. That appears to be what was told to Mr. Leavey. I also confirmed talking to the agent, and his name is Chris, I don't remember his last name, that he called the INS -- or ICE, I'm sorry, on behalf of the defendant. So I can confirm that the defendant did have some contacts with law enforcement in New York and appeared to have helped himself in some way.

THE COURT: Mr. Leavey, what do you have to say on this?

MR. LEAVEY: As Mr. Roy stated, I spoke with the DEA agent in New York. He advised me that after the Ohio arrest, which occurred in 2001, and I do not know at what point this occurred, this defendant and another individual came to DEA and offered to provide information. He did provide information. That information led, according to the agent, to a seizure of 3 kilograms of cocaine and a firearm and one arrest; the defendant said three arrests the agent told me one arrest. I don't know what is the accurate number. The agent then advised me that he notified the state authorities in Youngstown, Ohio, and as a result of, he believes, as a result of the information that the defendant had provided, as well as the fact that the

Assistant District Attorney there said that it wasn't the strongest case that she had ever seen, they agreed to recommend a less than jail sentence. And the defendant pled guilty in January of 2005 and apparently was awaiting sentence when he was arrested here. And I note from the presentence report that they eventually dismissed the charges. I'm sure that was rather than bring him back to Youngstown, Ohio for a less than jail plea.

THE COURT: As far as I know, the Government has not moved in this case for a reduction in sentence or sentence below the guideline range based on what you learned from the DEA agent; is that correct?

MR. LEAVEY: That is correct, your Honor. There is no question that the defendant cooperated. But the Government feels that he has already received the benefit of his cooperation by the fact that he was about to receive a less than jail sentence on the charge with 600 grams of cocaine. We feel that he has already received that. But those are the facts as I understand it.

THE COURT: Does the Government have any objections to the presentence report?

MR. LEAVEY: The Government has no objections to the presentence report.